Wendy Brooks Crew, Baddley & Crew, Birmingham, AL, for plaintiff.

Charles S. Wagner, Jeffrey M. Sewell, Jefferson County Attorney's Office, Birmingham, AL, Terry McElheny, & J. Fred Wood, Jr., Dominick Fletcher Yeilding Wood & Lloyd, Birmingham, AL, for defendants.

**Isom E. TURQUITT, Administratrix of the Estate of Phillip Edward Turquitt, Deceased, Plaintiff,**

v.

**JEFFERSON COUNTY, ALABAMA, Jim McCreless and Melvin Bailey, Defendants.**

**No. CV 95–PT–2054–S.**

United States District Court, N.D. Alabama, Southern Division.

Jan. 19, 1996.

As Amended Feb. 6, 1996.

## MEMORANDUM OPINION

PROPST, District Judge.

This cause comes on to be heard on defendant Jefferson County's Motion To Dismiss, Alternatively Motion For Summary Judgment, filed on September 1, 1995. The sole present issue is whether the County defendant can, under any circumstances, be held liable for the alleged constitutional violation that plaintiff asserts relates to the defendant sheriff's improper classification and assignment of jail prisoners, particularly pretrial detainees.[1]

This issue requires a consideration of *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989), wherein the court stated as follows:

> The specific event which could give rise to county liability in this case is Amerson's hiring of Williams. The county may be liable under section 1983 in one of two ways. Sheriff Amerson may have been acting directly pursuant to an official county policy or custom in hiring Williams without an adequate background check. *See*

1. *See* tape of phone conference (Jan. 12, 1996)    (on file with court).

*Monell* [*v. Dep't of Social Services of New York*], 436 U.S. [658] at 694, 98 S.Ct. [2018] at 2037 [56 L.Ed.2d 611 (1978)]. Alternatively, Amerson may have been acting independently but as the ultimate repository of county authority in making personnel decisions. *Id.* (county policy may be made by "those whose edicts or acts may fairly be said to represent official policy"); *see generally Familias Unidas v. Briscoe,* 619 F.2d 391 (5th Cir.1980). As such, Amerson himself could have established the county policy or custom.

.     .     .     .     .

In this case, the county itself did not have any kind of official policy or well-established custom regarding personnel decisions. The county may be liable, however, for personnel policies or customs established by Sheriff Amerson if Amerson had *ultimate county authority* over such matters. The identification of officials having the authority to exercise final *county authority* over a particular area *is a matter of state law. City of St. Louis v. Praprotnik,* 485 U.S. 112 [122–24], 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988). Such officials may have that authority from one of two sources: county authority may be granted directly, or the authority may be delegated by an official having the power to do so. *Id.* (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986)).

.     .     .     .     .

In practice, Alabama counties and their sheriffs maintain their county jails in partnership. *The county in essence provides the facility and the money for upkeep, and the sheriff in essence manages the institution.*

.     .     .     .     .

*Macon County, not the state, has the responsibility for running the county jail* under Alabama law.[2] As a general principle, the county cannot be insulated from liability for constitutional violations occurring in the performance of its obligations by assigning the authority to perform those obligations to another party.

.     .     .     .     .

Regardless of the sheriff's duties otherwise, we are looking narrowly at Sheriff Amerson's hiring decisions for the Macon County jail.... One official may exercise county authority over some matters and state authority over other matters.

*Parker,* 862 F.2d at 1477–79 (emphasis added).

In deciding that Macon County could be held responsible for the hiring decisions of the subject sheriff, *Parker* relied upon the following referenced statutes:

Every county in Alabama must maintain a county jail. Ala.Code § 11–14–10. More precisely, every county must obtain a site and erect a "suitable" jail. *Id.* at section 11–16–28. Once in place, the county must appropriate funds for the jail. *Id.* at section 11–14–20. The county's financial support of the jail includes compensating the sheriff, *Id.* at section 11–12–15(a)(2), and paying the reasonable business expenses incurred by the sheriff. *Id.* at sections 11–12–14, 11–12–15(a)(1), (2). The Alabama Board of Corrections reports to the county commission as the "body having control over the jail." *Id.* at section 14–6–81. Alabama relegates legal custody and charge of the county jail to the county sheriff. *Id.* at section 14–6–1. The sheriff is the caretaker with regard to prison living conditions. *Id.* at section 11–14–21. Any prisoners in the county jail are in the sheriff's custody. *Id.* at sections 11–16–29, 14–6–4. Pursuant to his responsibility of running the county jail, the sheriff has authority to hire jailers and other necessary personnel. *Id.* at section 14–6–1.

*Parker,* 862 F.2d at 1479.

Although the cited state statutes separately and specifically address the respective re-

---

**2.** Note the inconsistency with the sentence immediately above. (Footnote not in original).

sponsibilities of counties and sheriffs, *Parker* somehow held that Macon County, and not the State, had delegated responsibilities to the sheriff. Section 14–6–1 of the Alabama Code states the following:

> The sheriff has the legal custody and charge of the jail in his county and all prisoners committed thereto, except in cases otherwise provided by law, and may appoint a jailer for whose acts he is civilly responsible.

*Parker* held, notwithstanding this statutory provision, that Macon County had delegated *its* authority to appoint a jailer. This holding was in the face of clear Alabama law, acknowledged in *Parker,* that Alabama sheriffs are, under the Constitution of Alabama, state officials and not county officials and that "[t]he identification of officials having authority to exercise final county authority over a particular area is a matter of state law." *See Parker,* 862 F.2d at 1475, 1478.

*Parker* relies, at least in part, on *Familias Unidas v. Briscoe,* 619 F.2d at 392 (5th Cir. 1980), which related to the State of Texas. This court has not studied Texas law to determine if Texas sheriffs are state constitutional officials as they are in Alabama. *Familias Unidas* refers to sheriffs as being among elected *county* officials. *Familias Unidas,* 619 F.2d at 404. Even *Familias Unidas,* however, states, in discussing the duties of a county judge, "Instead, his duty in implementing section 4–28, much *like that of a county sheriff in enforcing state law,* may more fairly be characterized as the effectuation of the policy of the State of Texas embodied in that statute, for which the citizens of a particular county should not bear singular responsibility." *Familias Unidas,* 619 F.2d at 404 (emphasis added).

*Parker,* without stating the source of Macon County's power, simply decided that Macon County had the authority to hire a jailer, even though § 14–6–1 of the Alabama Code states that Alabama sheriffs have the authority to appoint jailers. Did Macon County, notwithstanding this statute, have the authority to appoint a jailer or to otherwise interfere with the sheriff's statutory authority to do so? From whence came its authority? *Parker,* in an *ipse dixit* fashion, simply states that Alabama sheriffs and counties are partners in *the operation of jails.* No authority other than purported Alabama statutory authority is cited for this statement.

No statute cited in *Parker* assigns to counties any duty relating to the hiring of jailers or any other jail *operations,* unless the duty to "maintain a jail" includes such obligations. *See Ala. Code* § 11–14–10 (1975). The Supreme Court of Alabama has held that the duty to "maintain a jail" under § 11–14–10 includes only the duty to keep the jail in good repair. *See, Keeton v. Fayette County,* 558 So.2d 884 (Ala.1989). Likewise, § 11–16–28 only requires a county to provide physical facilities. Section 11–14–20 simply provides for the payment of claims relating to utilities and upkeep of jails. While § 11–12–15(a)(2) provides for counties to pay sheriffs and deputies, it does not give counties authority to make hiring decisions. Sections 11–12–14 and 11–12–15(a)(1) provide for the payment of operating expenses.

Section 14–6–81 is cited in *Parker* for the proposition that "the Alabama board of corrections reports to the county commission as the 'body having control over the jail.'" Actually, the statute provides that the report is to be made to the Governor, with a copy to the county commission "or other board or body having control over the *jail,*" together with "recommendations for the betterment of the conditions thereof." *Ala. Code* § 14–6–81 (1975) (emphasis added). The statute is consistent with the physical facilities responsibilities of counties and says nothing of jail operations or employees. Living condition duties are assigned to sheriffs. *Ala. Code* § 11–14–21. Likewise, prisoners are kept in the custody of the sheriff. *Ala. Code* § 11–16–29. Sheriffs are also required to keep federal prisoners. Would a county be responsible for harm to a federal prisoner unrelated to the maintenance of physical facilities when a sheriff is required to receive such prisoners if the "jail of the county is sufficient?" *See Ala. Code* § 14–6–4 (1975).

While holding Macon County responsible for the hiring decisions of the sheriff, *Parker* itself recognized, citing § 14–6–1, that *"Alabama* relegates legal custody and charge of the county jail to the county sheriff." (emphasis added) *Parker*, 862 F.2d at 1479. In effect, *Parker* held that an Alabama county can be held liable for failure to perform duties delegated to a sheriff, not by the county, but by the State. The office of a sheriff in Alabama is a state constitutional office. The duties of the sheriff are prescribed by state statute. What authority does a county have to circumvent the state law or to interpose its own authority, which it can then delegate to the sheriff, when that authority has already been delegated to the sheriff by the State?

The fact that an Alabama sheriff has Eleventh Amendment immunity for his official acts provides no basis for a court's *ipse dixit* placement of authority with counties when they have none under the State law. A county cannot delegate authority it never has. In effect, *Parker* held that federal law gives the county the authority and imposes on it a duty, and simultaneously determines that it has delegated that authority and duty to the sheriff. *Parker* says, "Although the county's *authority* to provide a service may be vested in ... a state official, the county cannot be insulated from liability based on *its responsibilities* with regard to that service by the simple expedience of vesting power in a state official." *Parker*, 862 F.2d at 1479 (emphasis added). From whence comes the authority? From whence come the responsibilities? Who caused the vesting of responsibilities? Whose expedience?

*Parker* holds that various statutorily mandated duties of sheriffs have somehow been delegated to the sheriffs by the counties. This court can draw no plausible distinction between *Parker's* holding that Macon County had "[assigned] the authority to perform [its] obligations" to hire the jailer and the plaintiff's argument here that the county has "assigned" "its obligations" with reference to being a "caretaker with regard to prison living conditions" (section 11–14–21) or "its obligations" with reference to "prisoners in the county jail [being] in the sheriff's custody" (sections 11–16–29 and 14–6–4). If *Parker* was wrongfully decided, that is an issue for appellate courts. Jefferson County acknowledges that no subsequent controlling authority has overruled *Parker*.[3] *Swint v. City of Wadley*, 5 F.3d 1435 (11th Cir.1993), has been belatedly cited by Jefferson County. While it is distinguishable from *Parker* on its facts, the following language casts doubt on the *Parker* holding:

> Because Alabama counties are "authorized to do only those things permitted or directed by the legislature of Alabama," *Lockridge v. Etowah County Comm'n*, 460 So.2d 1361, 1363 (Ala.Civ.App.1984), and because the State has not assigned the counties any law enforcement authority, the sheriff is not exercising county power when he authorizes a raid on suspected criminal activity within his county.

*Swint*, 5 F.3d at 1450–51. *Swint*, however, does not specifically overrule *Parker* and it relates to a law enforcement raid by a sheriff, not jail activity.[4] *Lucas v. O'Loughlin*, 831 F.2d 232 (11th Cir.1987), suggests, rightly or wrongfully, that the mere fact that a

---

3. *Tittle v. Jefferson County*, 10 F.3d 1535 (1994), relied upon by Jefferson County, simply held that the plaintiff had not offered substantial evidence of a constitutional violation by *any* entity. *Dean v. Barber*, 951 F.2d 1210 (11th Cir.1992), simply held that the trial court did not err in not allowing Jefferson County to be joined based on a pure *respondeat superior* allegation with no *Monell* allegations. *Moore v. Jefferson County*, 44 F.3d 1008 (11th Cir.1994), is an affirmance without opinion. Nevertheless, Jefferson County has argued that these three cases are "dispositive of the instant case." Ironically, in view of Jefferson County's reliance on it, *Tittle* involved allegations relating to the jail *facility* which would more

logically subject a county to § 1983 liability than a claim based on operations.

4. *Swint's* holding is based on the fact that "[t]he State has not assigned the counties any law enforcement authority ..." *Id.*, at 1451. Where has the State assigned the counties authority to hire jailers or to classify and assign prisoners? The Eleventh Circuit's ruling in *Swint* was vacated in *Swint v. Chambers County Com'n*, — U.S. ——, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995) because the Court held that the Court of Appeals did not have jurisdiction to consider the county's appeal. The substantive reasoning of the Elev-

county is required to fund functions of a sheriff gives it the authority to control the sheriff's statutorily mandated duties. In *Lucas*, the court stated,

> Although elected by virtue of state law, he was elected to serve the county as sheriff. In that capacity, he had absolute authority over the appointment and control of his deputies. His and their salaries were paid by local taxation and according to a budget approved by the county commissioners. We conclude, therefore, that his act was of St. John's County.

*Lucas*, 831 F.2d at 235. *Swint* did not attempt to distinguish *Lucas*. *Swint's* holding would appear to be inconsistent with that of *Lucas* in that, presumably, the salaries paid also covered law enforcement activities.

If this court were writing on a clean slate, it would grant Jefferson County's motion. The court is bound, however, by the holding in *Parker*. Jefferson County's motion will be denied without prejudice to subsequent motions addressing the merits or *Monell* issues or both. Because this issue is not only critical to this case, but is also involved in many other cases causing substantial defense expense, the court will certify the decision pursuant to 28 U.S.C. § 1292(b).

enth Circuit opinion, however, would appear to     remain.