This is an appeal from a summary judgment for Fayette County in a wrongful death case filed against it by Charles Edward Keeton, the father and administrator of the estate of Timothy Edward Keeton ("Timmy"), a 16-year-old who died as a result of hanging — apparently a self-inflicted hanging — while confined in the Fayette County jail.[1] We reverse and remand.
This cause of action against Fayette County is not based upon a respondeat superior theory imposing liability for the actions or inactions of the sheriff of Fayette County. If it were, summary judgment would be appropriate. Oliver v.Townsend, 534 So.2d 1038, 1044-47 (Ala. 1988); Parkerv. Amerson, 519 So.2d 442 (Ala. 1987).
Under Ala. Code 1975, § 14-6-1, the sheriff has legal custody and charge of the jail in his county and of all prisoners committed thereto. However, since the enactment of Act 82-33, Alabama Acts 1982, which amended Ala. Code 1975, § 11-14-10, the county commission of each county is required to maintain a jail in its county.[2] *Page 886 
This Court has not interpreted the phrase "maintain a jail." InBlack's Law Dictionary (5th ed. 1979), the term "maintain" is defined as follows:
 "The term is variously defined as acts of repairs and other acts to prevent a decline, lapse or cessation from existing state or condition; bear the expense of; carry on; commence; continue; furnish means for subsistence or existence of; hold; hold or keep in an existing state or condition; hold or preserve in any particular state or condition; keep from change; keep from falling, declining, or ceasing; keep in existence or continuance; keep in force; keep in good order; keep in proper condition; keep in repair; keep up; preserve; preserve from lapse, decline, failure, or cessation; provide for; rebuild; repair; replace; supply with means of support; supply with what is needed; support; sustain; uphold. Negatively stated, it is defined as not to lose or surrender; not to suffer or fail or decline."
In Webster's Third New International Dictionary, Unabridged, (1971), "maintain" is defined as:
 "[T]o keep in a state of repair, efficiency, or validity: preserve from failure or decline . . .: to sustain against opposition or danger: back up: DEFEND: UPHOLD . . .: to uphold in argument: contend for . . .: to preserve in: carry on: keep up: CONTINUE . . .: to provide for: bear the expense of: SUPPORT . . .: to affirm in or as if in argument: ASSERT, DECLARE . . .: to assist (a party to legal action) so as to commit maintenance."
In Holcombe v. Mobile County, 229 Ala. 77,155 So. 640 (1934), this Court interpreted the phrase "expense incident to the . . . maintenance . . . of each county jail" in what is now Ala. Code 1975, § 14-6-104, to relate to "maintenance of the building and its equipment" and not to relate to prisoners or to require the county commission to provide the fuel for cooking meals for prisoners. We hold that, by using the phrase "maintain a jail" in § 11-14-10, the Legislature intended to require the county commission to keep a jail and all equipment therein in a state of repair and to preserve it from failure or decline. The chairman of a county commission is authorized and empowered to visit and to examine the condition of the county's jail once a week and without informing the sheriff or jailer. See § 11-14-22.
In March 1982, Fayette County applied to the Alabama Department of Youth Services to have two cells in the jail for adult prisoners in Fayette County approved for juvenile jail detention. This approval was obtained for a period of one year and was renewed each year thereafter until after the death of Timmy. Alabama Code 1975, § 12-15-61, provides that a juvenile may be detained only in facilities that have been established, licensed, or approved by the Department of Youth Services or the Department of Human Resources for such purpose; and minors or juveniles can be detained in a jail for the detention of adults only if no other detention facility is available, if the detention is in a room separate and removed from all contact with adult inmates, if adequate supervision is provided, and if the facility is approved by the Department of Youth Services. To obtain the approval of the Department of Youth Services, Fayette County submitted a "Manual of Operating Procedures: Fayette County Jail Detention Program." This manual provided: *Page 887 
 "[T]here must be one staff person available to monitor Juvenile offenders at all times. There must be visual checks made every 30 minutes. The area [where the juveniles are detained] shall be monitored by intercom [24 hours a day by staff member at least 19 years old, with a high school diploma or equivalent, who is in good health and free of communicable disease]."
In Keeton's complaint, he alleges that the "Fayette County Jail did not meet the requirements for juvenile detention as set forth by the Alabama Department of Youth Services as required by Ala. Code 1975, § 12-15-61," and that Fayette County was "under a duty to properly supervise, care for, and provide adequate detention for [Timmy], . . . [and] failed to remove [Timmy's] belt prior to imprisoning and confining him, and failed to use adequate measures to monitor, or otherwise supervise [Timmy], while [he was] in custody. . . ."
Violation of statutes or ordinances may be negligence.Vines v. Plantation Motor Lodge, 336 So.2d 1338 (Ala. 1976). If the statute or ordinance violated was enacted or promulgated for the protection of the person claiming to have been injured by reason of the violation, the violation of the statute may be negligence per se or negligence as a matter of law. Allman v. Beam, 272 Ala. 110, 130 So.2d 194
(1961). Perhaps Fayette County had no duty initially to provide cells for the detention of juvenile offenders in the jail used for the confinement of adults; however, that question is not before us, for once Fayette County voluntarily undertook a duty beyond that which the law imposed, it thereafter was charged with the duty of acting with due care. Parker v. ThyssenMining Constr., Inc., 428 So.2d 615 (Ala. 1983);Dailey v. City of Birmingham, 378 So.2d 728 (Ala. 1979). There was evidence before the trial court when it granted Fayette County's motion for summary judgment that one reason for requiring the monitoring of a juvenile offender confined to a jail cell is to make certain that the juvenile does not injure himself. Therefore, the fact that juveniles may attempt to harm themselves when incarcerated was reasonably foreseeable as a matter of law. This is different fromKeebler v. Winfield Carraway Hospital, 531 So.2d 841
(Ala. 1988), where it was held that foreseeability of a decedent's suicide is legally sufficient only if the deceased had a history of suicidal proclivities, or manifested suicidal proclivities in the presence of the defendant, or was admitted to the facility of the defendant because of a suicide attempt.
There was evidence that the intercom system used to provide constant audio monitoring of the cell in which Timmy was confined was not working. No one visually monitored Timmy after he was placed in his cell. There was testimony that he had been in the cell for an hour before he was found dead. There was evidence that no employee was available at any time, much less at all times, to monitor Timmy while he was confined. Timmy apparently hanged himself with his belt. There was evidence of a duty owed by Fayette County to Timmy; there was evidence of a breach of that duty; there was evidence that the breach of duty proximately caused Timmy's death. Therefore, the trial court erred in entering summary judgment in favor of Fayette County.
From reading the depositions of Keeton and Martha Lee Mitchell, probation officer for Fayette County, we know that Timmy had a "hard-knock" life. On the day of Timmy's death, Keeton had asked Ms. Mitchell to have Timmy put in jail for a week for failing to return to Keeton after spending a weekend with his mother, who had been divorced from Keeton for many years. At Ms. Mitchell's request, the juvenile judge of Fayette County signed a pickup order on Timmy and gave it to Ms. Mitchell. That afternoon, Timmy came to the courtroom of the Fayette County courthouse to testify as a witness in juvenile court in a case against another of Keeton's sons, who was Timmy's half-brother. In the courtroom of the juvenile court, with Keeton present, Ms. Mitchell had a City of Fayette policeman execute the pickup order; and in the presence of Keeton, the plaintiff/appellant here, Timmy was taken *Page 888 
from the courtroom to the county jail. There was testimony that Timmy was upset when he was taken from the courtroom. The record shows that Timmy was 16 years old, weighed 119 pounds, and was approximately 5' 6" tall. Why was Timmy taken to jail under these uncontradicted circumstances? This case transcends questions of who is liable and who may recover damages for the death of this child. This case weighs heavily on this Court, as the court of last resort in this state and the body that promulgated the Alabama Rules of Juvenile Procedure; and the tragic, hard-knock death of this 16-year-old less than two hours from the time that he had taken the last few steps from the courtroom, where he had come to do his civic duty, to a jail cell where he felt so rejected that he ended his young life, causes us to question what is going on in the juvenile justice system and what must be done to correct it. But those concerns are beyond our obligation to the parties to this cause. They involve our obligation to all of the children of Alabama — those who endure and those who are spared the hard-knock life. Timmy cannot win by the ultimate decision in this case, whether his father, who had him arrested and watched him being taken from the courtroom to a jail cell where he died, recovers any money or not; however, the thousands of other Timmys can win if we insist that our juvenile justice system be administered in accordance with the letter and the spirit of the Alabama Rules of Juvenile Procedure and if this Court, as the body with the power to promulgate those rules, makes certain that the letter and the spirit of those rules are based on what is right for the child and not what is expedient for the system.
REVERSED AND REMANDED.
HORNSBY, C.J., and JONES, SHORES, ADAMS and KENNEDY, JJ., concur.
MADDOX, ALMON and STEAGALL, JJ., concur in the result.
[1] Hubert Norris, formerly sheriff of Fayette County, was also a party defendant and he also was given a summary judgment. On the basis of Parker v. Amerson,519 So.2d 442 (Ala. 1987), Keeton did not appeal from the summary judgment for the sheriff.
[2] Prior to the amendment of Ala. Code 1975, § 11-14-10
by Act 82-33, Alabama Acts 1982, which added a sentence reading "Each county within the state shall be required to maintain a jail within their county," it was within the exclusive discretion of the county commission to determine the necessity for a new jail; and in absence of fraud, corruption, or unfair dealings, their action was not subject to judicial control or revision, for in making the determination, the county commission acted in a quasi-legislative capacity. See Boardof Revenue of Etowah County v. Hutchins, 250 Ala. 173,176, 33 So.2d 737, 740 (1948). By the 1982 amendment to §11-14-10, the discretion of a county commission over the maintenance of a jail was removed by the legislature. Since the 1982 amendment, there is a statutory duty on each county commission to "maintain a jail" in its county, for §11-14-10 now provides in pertinent part:
 "The county commission shall erect . . . jails . . ., and such county commission shall have authority to levy a special tax for that purpose. Each county within the state shall be required to maintain a jail within their county." (Emphasis supplied.)