137 F.3d 1285
 11 Fla. L. Weekly Fed. C 1156
 Susan W. TURQUITT, as administratrix of the estate of
Phillip Edward Turquitt, deceased, Plaintiff,
Isom E. Turquitt, Intervenor-Plaintiff-Appellee,
v.
JEFFERSON COUNTY, ALABAMA, Defendant-Appellant,
Melvin Bailey, Sheriff of Jefferson County, Alabama,
individually and in his official capacity, Jim McCreless,
Chief Jailer of Jefferson County, Alabama, individually and
in his official capacity, Defendants.
 No. 96-6333.
 United States Court of Appeals,
Eleventh Circuit.
 March 25, 1998.
 
 Jeffrey M. Sewell, Birmingham, AL, for Defendant-Appellant.
 James W. Webb, Kendrick E. Webb, Bart Harmon, Webb & Eley, P.C., Montgomery, AL, for Amicus Curiae.
 Wendy Brooks Crew, Baddley & Crew, Terry McElheny, Birmingham, AL, for Intervenor-Plaintiff-Appellee.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before HATCHETT, Chief Judge, and TJOFLAT, ANDERSON, EDMONDSON, COX, BIRCH, DUBINA, BLACK, CARNES, BARKETT and HULL, Circuit Judges.*
 DUBINA, Circuit Judge:
 
 
 1
 We took this case on an interlocutory appeal to decide whether an Alabama county can be held liable under 42 U.S.C. § 1983 for injuries befalling a county jail inmate arising from the sheriff's management of the jail. For the reasons outlined below, we hold that it cannot.
 
 I. BACKGROUND
 
 2
 On July 29, 1995, while he was a pre-trial detainee in the county jail of Jefferson County, Alabama, Philip Turquitt ("Turquitt") was fatally injured in a fight with another inmate, who was a convicted felon, in the dayroom of the jail. The administratrix of Turquitt's estate ("Plaintiff") filed an action pursuant to 42 U.S.C. § 1983 for alleged violations of Turquitt's rights under the federal constitution. Named as defendants in the suit were the Jefferson County sheriff in his official and individual capacities, several deputy sheriffs in their individual and official capacities, and Jefferson County ("the County"). The amended complaint alleges that the jail was severely over-crowded and that because the jail lacked a classification system, inmates were housed together without regard to their relative dangerousness or conviction status. The complaint further alleges that the defendants knew of the dangerous propensities of the man who killed Turquitt but took no action to control him, and that they generally did not exercise adequate supervision over the inmates in the jail. Finally, the complaint asserts that the defendants failed to properly train and supervise staff members who worked in the jail.
 
 
 3
 The County filed a motion to dismiss, or alternatively for summary judgment, on the ground that the sheriff, who is the official policymaker for the jail, acts for the state rather than the county in administering the jail. The district court denied the motion on the authority of Parker v. Williams, 862 F.2d 1471 (11th Cir.1989), which held that in Alabama a sheriff is the county policymaker with respect to the operation of the county jail. Turquitt v. Jefferson County, 929 F.Supp. 1451, 1455 (N.D.Ala.1996). The district court was bound by Eleventh Circuit precedent to deny the County's motion to dismiss, but the court stated that it would have granted Jefferson County's motion if it were "writing on a clean slate." Id. Because of the importance of the issue to the parties in the instant suit, as well as to others similarly situated, the district court certified the decision for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).
 
 
 4
 Jefferson County filed a "Suggestion of Hearing En Banc" asserting that Parker was in conflict with decisions of the Supreme Court and precedents of this court, and that the County's appeal involved a question of exceptional importance. See 11th Cir. R. 35-3. Recognizing the importance of the issues involved and the fact that a panel of this court would be bound by Parker to affirm the district court's order, a majority of the circuit judges in regular active service voted to hear this appeal en banc. Fed. R.App. P. 35(a). We ordered the parties to brief two issues:
 
 
 5
 1. Whether an Alabama sheriff is a county policymaker for purposes of § 1983 liability when operating a jail.
 
 
 6
 2. Whether Parker was wrongly decided and should be overruled.
 
 II. THE COUNTY'S LIABILITY
 
 7
 A local government may be held liable under § 1983 only for acts for which it is actually responsible, "acts which the [local government] has officially sanctioned or ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 479-80, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986) (citing Monell v. New York City Dept. of Soc. Serv., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). In determining whether Jefferson County is a proper defendant in this suit, we first look to the analysis of the Supreme Court in McMillian v. Monroe County, --- U.S. ----, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997), in which the Court considered whether an Alabama sheriff was a state or a county policymaker for § 1983 purposes when engaged in law enforcement activities. To evaluate whether a local government is liable under § 1983, a court must " 'identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.' " McMillian, --- U.S. at ----, 117 S.Ct. at 1736 (quoting Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737, 109 S.Ct. 2702, 2724, 105 L.Ed.2d 598 (1989)).
 
 
 8
 Two principles guide our analysis of which governmental actors speak with final authority. McMillian, --- U.S. at ----, 117 S.Ct. at 1737. First, we must focus our attention on the particular area or issue for which the government official is alleged to be the final policymaker. Id. (citing Jett, 491 U.S. at 737, 738, 109 S.Ct. at 2724; City of St. Louis v. Praprotnik, 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988) (plurality opinion)). Second, our inquiry depends upon an analysis of Alabama law. McMillian, --- U.S. at ----, 117 S.Ct. at 1737 (citing Jett, 491 U.S. at 737, 109 S.Ct. at 2724; Pembaur, 475 U.S. at 483, 106 S.Ct. at 1300 (plurality opinion)). We must determine the "actual function" of an official in a particular area by reference to "the definition of the official's functions under relevant state law." Id.
 
 
 9
 Initially, we determine who the policymaker is and in which particular area that policymaker acted. Praprotnik, 485 U.S. at 123, 108 S.Ct. at 924 ("[T]he challenged action must have been taken pursuant to a policy adopted by the official ... responsible under state law for making policy in that area of the [local government's] business."). The Plaintiff explains that her theories of recovery against the County are based on three alleged acts or omissions:
 
 
 10
 (1) deliberate indifference to the substantial risk of serious harm to the inmates of the jail;
 
 
 11
 (2) lack of an adequate policy to control inmate violence in the jail, as well as a failure to enforce a policy of classifying and segregating inmates based upon status, propensity for violence, medical needs, etc.; and
 
 
 12
 (3) failure to adequately staff, train, and supervise its employees, officers and agents, and a failure of such employees, officers and agents to supervise and control the inmate population.
 
 
 13
 En Banc Brief of Appellee at 2. Alabama law provides that it is the sheriff who has the duty to ensure that inmates do not come to harm, to develop a policy of controlling inmate violence, and to staff the jail with appropriately trained jailors. Ala.Code §§ 14-6-1, 14-6-105 (1995). Because the parties agree that the sheriff possesses the authority to make final policy with respect to these actions, the contested issue is whether the sheriff functions as the County's policymaker when he takes those actions.
 
 
 14
 Our answer to this question turns on state law, including state and local positive law, as well as custom and usage having the force of law. McMillian v. Johnson, 88 F.3d 1573, 1577 (11th Cir.1996) (citing Praprotnik, 485 U.S. at 124 n. 1, 108 S.Ct. at 924 n. 1 (plurality opinion, adopted by the Court in Jett, 491 U.S. at 737, 109 S.Ct. at 2724)), aff'd --- U.S. ----, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997).[1] Furthermore, the federal judiciary must "respect state and local law's allocation of policymaking authority," and not "assume that final policymaking authority lies in some entity other than that in which state law places it." McMillian, 88 F.3d at 1577 (citing Praprotnik, 485 U.S. at 126, 131, 108 S.Ct. at 925-26, 928). Our review of Alabama law persuades us that an Alabama sheriff acts exclusively for the state rather than for the county in operating a county jail.
 
 
 15
 We begin, as did the Supreme Court in McMillian, with the supreme law of the state, the Alabama Constitution. McMillian, --- U.S. at ----, 117 S.Ct. at 1737 (citing Alexander v. State ex rel. Carver, 274 Ala. 441, 150 So.2d 204, 208 (1963)). Alabama's Constitution clearly denominates the sheriff as a member of the state's executive department. Ala. Const. of 1901, Art. V § 112. The Alabama Supreme Court, construing Art. V, § 112, as well as its legislative history, concluded that a sheriff is an executive officer of the state. Parker v. Amerson, 519 So.2d 442, 443 (Ala.1987). The court further held that because a sheriff is an executive officer, "a sheriff is not an employee of a county for the purposes of imposing liability on the county." Id. at 442; see also Hereford v. Jefferson County, 586 So.2d 209, 209 (Ala.1991).
 
 
 16
 The legislative history of the Alabama Constitution reflects an intent to bring sheriffs under the control of superior state officials. Sheriffs were first named executive department officials when the state constitution was amended in 1875. Ala. Const. of 1875, Art. V § 1. At that time, authority to impeach a sheriff resided in the court of the county in which the sheriff held office. Ala. Const. of 1875, Art. VII § 3. In 1901, the framers of the Alabama Constitution decided that the Governor, as chief executive officer of the state, needed more control over the sheriffs. See Parker v. Amerson, 519 So.2d at 443-44. Accordingly, the Constitution was amended to enable the Governor to order the impeachment of sheriffs before the Alabama Supreme Court, thereby solidifying the chief executive officer's control over inferior executive officers. Id.
 
 
 17
 Significantly, this amendment was specifically designed to "guarantee the political rights of prisoners." Id. (citing Official Proceedings of the Constitutional Convention of 1901 (Vol.1) at 887-90). The amendment reflected the legislature's concern that county courts were failing to punish sheriffs who, by reason of malice or cowardice, had allowed lynch mobs to remove prisoners from the jails and murder them. Id. (citing Official Proceedings of the Constitutional Convention of 1901 (Vol.1) at 887-90). The Alabama Supreme Court has discerned in the constitutional amendment an intention on the part of the drafters to ensure that "a prisoner when he comes into the hands of the officers of the state shall be panoplied about with all the powers of the state...." State ex rel. Garber v. Cazalas, 162 Ala. 210, 50 So. 296, 296 (1909). In short, Alabama's Constitution sends a clear message that a sheriff is a state officer, whose actions with respect to the well-being of jail inmates are most appropriately controlled by state officials.
 
 
 18
 The Alabama Code also supports our conclusion that Alabama sheriffs act as state officers when supervising inmates and otherwise operating the county jails. In Alabama, counties have only the powers explicitly granted them by the legislature. Tuscaloosa County v. Alabama Great Southern R.R. Co., 227 Ala. 428, 150 So. 328, 331 (1933). Because Alabama counties possess no inherent authority (policymaking or otherwise), absent an express delegation from the legislature, we must look to the Alabama Code to determine their role in operating the jails.[2] A thorough analysis of the Code reveals that no statute authorizes counties to supervise inmates in the county jails; instead, authority over inmates is expressly delegated to Alabama sheriffs. Moreover, in operating the jails, sheriffs are subject to control by state executive agencies, not by counties.
 
 
 19
 Under the Alabama Code, the sheriff has control over the inmates of the jail, the employees of the jail, and the jail itself. The Code bestows upon the sheriff "the legal custody and charge of the jail in his county and all prisoners committed thereto." Ala.Code § 14-6-1 (1995). The Alabama Supreme Court has held that § 14-6-1 demonstrates that "the sheriff's authority over the jail is totally independent of the [county commission]." King v. Colbert County, 620 So.2d 623, 625 (Ala.1993). The sheriff appoints, directs, and controls the deputies and jailers who work at the jail. Ala.Code § 14-6-105. The County has no authority to manage the sheriff's employees. See Lockridge v. Etowah County Comm'n, 460 So.2d 1361, 1363 (Ala.Civ.App.1984); see also Terry v. Cook, 866 F.2d 373, 379 (11th Cir.1989) (finding that Alabama county commissioners have no authority to hire or fire deputies or jailers). In both the King and Lockridge decisions, the Alabama courts assumed as a matter of statutory construction that an express legislative delegation of authority to one official, the sheriff, necessarily meant that another entity, the county, possessed no authority in that area.
 
 
 20
 A state agency, the Alabama Department of Corrections, oversees the county jails and has the authority to regulate them.[3] The Department of Corrections must inspect the county jails periodically, to "aid in securing the just, humane, and economic management" of them. Ala.Code §§ 14-1-8(a)(3), 14-6-81. After inspecting a jail, the Department of Corrections must make a detailed report to the Governor. Ala.Code § 14-6-81. The Department of Corrections has the authority to promulgate rules for the jail pertaining to "management and security." Ala.Code §§ 14-1-8(a)(6), 14-6-86.
 
 
 21
 We recognize that Alabama counties possess some duties with respect to county jails. However, none of these duties relates to the daily operation of the jails or to the supervision of inmates. The duties of the counties with respect to the jails "are limited to funding the operation of the jail and to providing facilities to house the jail." Stark v. Madison County, 678 So.2d 787, 787 (Ala.Civ.App.1996). The county commission is charged with erecting and maintaining jails, and each county is required to maintain a jail of sufficient size and strength to secure the prisoners. Ala.Code §§ 11-14-10, 11-14-13 (1989). In construing these provisions, the Alabama courts have made it clear that the duty of the county to erect and maintain a county jail pertains exclusively to the physical plant of the jail. The duty to "maintain a jail" under § 11-14-10 is merely the duty to keep the "jail and all equipment therein in a state of repair and to preserve it from failure or decline." Keeton v. Fayette County, 558 So.2d 884, 886 (Ala.1989).
 
 
 22
 The Alabama Code provides for the counties to remain informed about conditions within the jails. We conclude that these statutes are entirely consistent with the counties' limited role in building and funding the jails and do not imply or impart any control over the jails' operation. The county commission has the authority to inspect the jail without notice to the sheriff. Ala.Code § 11-14-22 (1989). This is a reasonable way for the county to learn what its appropriations buy and whether future funding should be increased or redirected. A copy of the Department of Corrections' inspection report to the Governor is also given to "the county commission, city council, or other board or body having control over the jail, prison or almshouse dealt with in such report." Ala.Code § 14-6-81. In the absence of any positive delegation of control over the jails from the legislature to the counties, we do not place any significance in the fact that this language could be construed to name the county commission as the body having control over the jail.
 
 
 23
 The county commission must appropriate funds for the jail to cover the expense of necessities such as bedding, clothing, electricity, and sanitation. Ala.Code §§ 11-12-15(a)(1), 11-14-20. Under emergency circumstances, the county commission has a duty to hold a special meeting and appropriate funds to meet necessities. Ala.Code §§ 11-14-19, 11-14-20. However, the Plaintiff's complaint does not relate to the provision of such necessities, nor does it allude to any failure on the County's part to appropriate adequate funds.
 
 
 24
 The County also pays the salaries of the sheriff and jail personnel. Ala.Code §§ 11-12-15(a)(2), 36-22-16. The Supreme Court held that an Alabama county's duty to pay the sheriff's salary "does not translate into control over him, since the county neither has the authority to change his salary nor the discretion to refuse payment completely." McMillian, --- U.S. at ----, 117 S.Ct. at 1740. The Court further held that the county's ability to limit the sheriff's operating budget to that which is reasonably necessary gives the county "at most" an influence over the sheriff that is "attenuated and indirect." Id.
 
 
 25
 The sheriff is under a duty, placed upon him by the state legislature, to provide necessities such as sanitary facilities, clothing, bedding, and drinking water as far as the County's appropriation of funds allows. Ala.Code § 11-14-21. Plaintiff argues that this provision demonstrates that Alabama counties are partners with Alabama sheriffs in their operation of the county jails. On the contrary, we conclude that the governing statutes impose complementary but distinct duties upon counties and sheriffs with respect to the county jails. Section § 11-14-20 places upon the County the duty to make available adequate funds, while § 11-14-21 passes the mantle of responsibility to the sheriff who must spend those funds. Far from joining the sheriff in a partnership with the County, the "as far as the appropriation allows" language excuses the sheriff from performance of this duty if the County has not first performed its coordinate duty. Moreover, even if the sheriff and the County might be said to be in a partnership with respect to providing bedding, electricity, and clean water, the present lawsuit does not charge the lack of any such commodity.
 
 
 26
 The Alabama Supreme Court has dispelled the partnership theory by holding that the authority of the sheriff over operation of the jail is "totally independent" of the county commission. King, 620 So.2d at 625. Where a duty is specifically placed upon the sheriff, that duty is "statutorily reserved" for the sheriff, and the county has no liability for the sheriff's failure to perform it. Stark, 678 So.2d at 788 (stating that sheriff is directed to operate jail and to keep it clean and therefore county has no liability for inmate's slip and fall accident caused by puddle of water on floor).
 
 
 27
 Finally, we observe that there is no evidence that Alabama has engineered the structure of its government so as to allow the counties to evade § 1983 liability for constitutional deprivations suffered by jail inmates. Alabama's system was established before the Supreme Court's decision in Monell established the parameters of local government liability under § 1983, see McMillian, --- U.S. at ----, 117 S.Ct. at 1742, and it was established for the express purpose of providing greater protection to the inmates of the county jails. See e.g., Cazalas, 50 So. at 296.
 
 III. PARKER v. WILLIAMS
 
 28
 As the discussion in Part II indicates, Alabama counties have no duties with respect to the daily operation of the county jails and no authority to dictate how the jails are run. Monell, which firmly established that local governments could be sued under § 1983, is "a case about responsibility." Pembaur, 475 U.S. at 478, 106 S.Ct. at 1297 (discussing Monell v. New York City Dept. of Soc. Serv., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). The County cannot be liable for the harms that befall jail inmates due to improper operation of the jail or negligent supervision of its inmates because the County has no responsibility in that area. As we observed in McMillian, where we held that an Alabama county is not liable for a sheriff's law enforcement activities,
 
 
 29
 because counties have no control over sheriffs, allowing county liability for a sheriff's actions would ignore Monell 's conception of municipalities as corporations and substitute a conception of municipalities as mere units of geography.... [H]olding the county liable for a sheriff's actions would impose even broader liability than the respondeat superior liability rejected in Monell.
 
 
 30
 88 F.3d at 1577. Only our decision in Parker supports the Plaintiff's position that the County can be held liable for injuries to jail inmates because it operates its jail in partnership with the county sheriff. As the foregoing analysis demonstrates, Parker is not in accord with controlling § 1983 jurisprudence, and we hereby overrule that decision, and any subsequent decisions following it, insofar as they held that Alabama sheriffs in their daily operation of county jails act as policymakers for the county.
 
 
 31
 The holding and rationale of Parker are flawed for two reasons. First and foremost, the opinion is not based on a straightforward reading of state law. The Parker court developed a rather elaborate theory that the sheriffs and counties operate the county jails in partnership. We do not hold that a state could never choose such an arrangement; the power of government may be distributed among officials and official bodies in a "rich variety of ways." See Praprotnik, 485 U.S. at 124, 108 S.Ct. at 925 (plurality). However, after the Parker court announced the partnership theory of jail management, the Alabama courts interpreted the controlling statutes in a way that offers a simpler explanation of the governance of the Alabama county jails. Most importantly, the Alabama Supreme Court ruled that the statutory mandate that the county "maintain a jail" simply meant that the county must "maintain the jail building and its equipment." Keeton, 558 So.2d at 886. Alabama's highest court clarified the sheriff's role in King v. Colbert County, which held that a county sheriff operates a jail independently of the county commission. King v. Colbert County, 620 So.2d at 625. This elucidation of Alabama's law explains that while counties have certain responsibilities with respect to county jails, those responsibilities are clearly enumerated in the statute and relate only to maintaining the jail's physical plant and providing operational funding. The sheriffs, on the other hand, have full responsibility for daily management of the jails, including inmate supervision, and they are not subject to county oversight in their performance of this responsibility. See Ala.Code § 14-6-1; King v. Colbert County, 620 So.2d at 625. We recognize our obligation to "respect state and local law's allocation of policymaking authority," McMillian, 88 F.3d at 1577 (citing Praprotnik, 485 U.S. at 131, 108 S.Ct. at 928), and therefore, Parker cannot continue to be the law of this circuit.
 
 
 32
 Second, the Parker court held that a county could be liable for the actions of a sheriff over whom it had no supervisory or administrative control. Parker, 862 F.2d at 1480. The law is to the contrary: local governments can never be liable under § 1983 for the acts of those whom the local government has no authority to control. A local government "must have power in an area in order to be held liable for an official's acts in that area." McMillian, 88 F.3d at 1577. When establishing the parameters of local government liability for § 1983 violations, Congress declined to impose liability on municipalities for the actions of mobs which the municipalities had no duty under state law to control. Pembaur, 475 U.S. at 479, 106 S.Ct. at 1298 (citing Monell, 436 U.S. at 665-83, 98 S.Ct. at 2022-32). In McMillian, the Supreme Court analyzed state law to determine whose policymaker the sheriff was when engaging in law enforcement by asking which government body, under state law, had direct control over how the sheriff fulfilled his law enforcement duty. McMillian, --- U.S. at ----, 117 S.Ct. at 1739. In addition, a local government can only be liable under § 1983 for injuries which the government itself caused, Monell, 436 U.S. at 691, 98 S.Ct. at 2036, and causation necessarily implies control.
 
 IV. CONCLUSION
 
 33
 Parker is overruled to the extent that it conflicts with our holding that Alabama sheriffs are not county policymakers in their daily management of county jails. Accordingly, we vacate the district court's order denying the County's motion to dismiss and remand this case for further proceedings consistent with this opinion. We emphasize that our holding is limited to answering the questions for which we granted interlocutory appeal. We expressly do not decide any remaining issues that are pending in the district court, and we offer no opinion about any other claims that have been or may be raised against the defendants in this case.
 
 
 34
 VACATED AND REMANDED.
 
 
 
 *
 Judge Stanley Marcus was appointed after this case was orally argued, but was an active member of the court at the time the case was decided. He has elected not to participate in the decisional process
 
 
 [1]
 Because the analysis of this issue turns on Alabama state law, the holdings of courts in other jurisdictions are of little use
 
 
 [2]
 We confine our analysis to positive sources of law, because we are unaware of any evidence that counties are in fact operating jails on the authority of "custom or usage having the force of law." Praprotnik, 485 U.S. at 124 n. 1, 108 S.Ct. at 924 n. 1 (plurality opinion)
 
 
 [3]
 The Alabama Department of Corrections is the successor to the Alabama Board of Corrections. Ala.Code § 14-1-1.1