Barbara GAINES and Doris Ofield, Personally and as Administrators of the Estate of Carl Eugene Row, Deceased, Plaintiffs,

v.

CHOCTAW COUNTY COMMISSION, Donald F. Lolley, Individually and in his Official Capacity as Sheriff of Choctaw County, Alabama, et al., Defendants.

No. CIV.A. 02–0198–CB–M.

United States District Court, S.D. Alabama, Southern Division.

Jan. 9, 2003.

---

John A. Bivens, Tuscaloosa, AL, for Plaintiffs.

Kendrick E. Webb, Kelly G. Davidson, Esq., Christina Harris Jackson, Gary Lee Willford, Jr., Webb & Eley, P.C., Montgomery, AL, for Defendants.

## ORDER

BUTLER, Chief Judge.

This matter is before the Court on motions to dismiss filed by defendants Choctaw County Commission and Sheriff Donald F. Lolley. (Docs. 2, 4, 14 & 16.) In this action, plaintiffs assert state and federal law claims against both the Sheriff and the County arising from the death of their brother, Carl Euguene Rowe, which plaintiffs allege resulted from the denial of medical treatment to Rowe while he was a pretrial detainee in the Choctaw County jail. The County contends that it cannot be held liable for any state or federal violation arising from a claim of inadequate medical care because Alabama law imposes

on the Sheriff, a state officer, the duty to attend to the medical needs of inmates in his custody. The sheriff asserts that the state and federal claims against him are barred by sovereign immunity and by qualified immunity. For the reasons set forth below, the Court finds that some claims are due to be dismissed but other claims against both defendants survive.

## I. Procedural Background

Plaintiffs, as administrators of their brother's estate, initially filed this action in the Circuit Court of Choctaw County, Alabama. The original complaint asserted state law claims against the Choctaw County Commission, Sheriff Donald Lolley and various fictitious defendants. After plaintiffs amended their complaint to add claims under 42 U.S.C. § 1983, defendants removed the case to this Court and filed motions to dismiss. After removal, and while the motions to dismiss were pending, plaintiffs amended the complaint to add more specific factual allegations in support of their claims. Defendants then filed motions to dismiss the second amended complaint.

## II. The Complaint

The complaint, as amended, asserts state law causes of action against both defendants for wrongful death (Count One), pain and suffering (Count Two), and negligent "train[ing], counsel[ing]and supervis[ion]" (Count Three) and against the County Commission[1] for breaching its al-leged statutory duties to: (1) maintain the jail, (2) provide adequate funding for medical care for inmates, and (3) hire a jail physician (Count Four). Plaintiffs have also asserted a federal law claim against Sheriff Lolley under 42 U.S.C. § 1983 for violation of the decedent's Fourteenth Amendment rights (Count Five), alleging that the Sheriff's denial of medical care to the decedent, his failure to train his jail employees regarding the care of seriously ill inmates, and his policy regarding dispensing prescription medicine to inmates amounted to deliberate indifference to the decedent's serious medical needs. Finally, plaintiffs have asserted a § 1983 claim against the County Commission (Count Six) alleging that its failure to maintain the jail, to provide adequate funding or to hire a physician amounted to deliberate indifference to the decedent's serious medical needs in violation of the Fourteenth Amendment.

These claims are based upon the following allegations of fact.[2] On August 10, 1999, Sheriff Lolley arrested Carl Eugene Rowe ("the decedent") for the murder of his brother. At the time of his arrest, Rowe was a patient at Thomasville Infirmary where he was being treated for acute renal failure and pneumonia. Sheriff Lolley personally removed Rowe from the hospital over the strenuous objection of Rowe's physician. Rowe was placed in the Choctaw County Jail where his condition deteriorated. He became unable to walk or to feed himself. On visiting days, the family would find Rowe covered in urine,

---

1. Although this count concludes with a demand for judgment against the "Defendants," the Court assumes that the plural form is either a typographical error or the result of lack of precision in draftsmanship. It is difficult to see how a claim might be asserted against the Sheriff for breach of a statutory duty imposed upon the County.

2. The facts upon which these claims are based are primarily set forth in the plaintiff's second amendment to the complaint. (Doc. 13)

feces and bed sores and suffering from a high fever. Eventually, the family paid other inmates to help bathe and feed Rowe. Jailers refused to administer prescription medication because, they informed the family, the Sheriff's policies did not require them to do so.

The family complained to Sheriff Lolley several times over a three-week period about Rowe's deteriorating health. Lolley refused the family's request to readmit Rowe to the hospital. The Sheriff did have Rowe taken to a nearby medical clinic where the treating physician recommended that Rowe be hospitalized, but the Sheriff refused. Finally, the family contacted the Alabama Department of Human Resources. After DHR intervened, the Sheriff again had Rowe taken to a local clinic where an ambulance was summoned to transport him to the hospital.

Rowe was admitted to the hospital, where he was found to be dehydrated and malnourished. Moreover, his illness had become irreversible, and he died a few days later.

### III. Issues Presented

Both defendants argue that plaintiffs' claims against them should be dismissed in their entirety. The Choctaw County Commission contends that it has no liability under state law because a county has no authority over the operation of the jail, a duty which falls upon the sheriff, who is considered a state officer. Further, the County argues that it cannot be held liable under § 1983 for deliberate indifference to the decedent's serious medical needs because it had no authority over the medical care of jail inmates.

Sheriff Lolley argues that all claims against him are due to be dismissed on various immunity grounds. First, Lolley contends that state law claims, whether asserted against him in his official or individual capacity, are barred by immunity. As to plaintiffs' § 1983 claims against him, the Sheriff contends that he is entitled to Eleventh Amendment immunity with respect to official capacity claims and that he is entitled to qualified immunity as to all individual capacity claims.

Finally, defendants assert two common arguments. Both contend that claims against them for punitive damages are due to be stricken. In addition, both defendants seek to have fictitious parties stricken from the complaint.

### IV. Standard of Review

"A motion to dismiss is only granted when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Harper v. Blockbuster Entertainment Corp.,* 139 F.3d 1385, 1387 (11th Cir.1998) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80, (1957)). For purposes of a motion to dismiss, the Court must accept all the allegations of the complaint as true and construe the facts asserted in light most favorable to the plaintiff. *Fortner v. Thomas,* 983 F.2d 1024, 1028 (11th Cir. 1993). If it is evident from the face of the complaint that an asserted affirmative defense, such as qualified immunity, bars relief, then the complaint is subject to dismissal, even though a valid claim is otherwise sufficiently stated. *Marsh v. Butler,* 268 F.3d 1014, 1022 (11th Cir.2001) (en banc).

## V. Choctaw County Commission [3]

### A. State Law Claims

#### 1. Negligent Training and Supervision

■ Plaintiffs' complaint can be interpreted to assert two general theories of County liability for wrongful death—negligence based upon its breach of certain statutory duties and negligence in training and supervision.[4] The latter claim clearly has no merit because the County is not responsible for training or supervising the Sheriff or his employees. *See Lancaster v. Monroe County,* 116 F.3d 1419, 1430 (11th Cir.1997) (county has no control over sheriff, deputies or jailers). The Sheriff is considered a state officers, and so are his employees. Therefore, the County has no supervisory authority over them and cannot be held liable for any alleged lack of training or supervision.

#### 2. Breach of Duties Imposed by Statute

Plaintiffs alternatively contend that the County is liable for Rowe's death due to its breach of three duties imposed upon it by Alabama law. First, plaintiffs argue that the County breached the duty to "maintain a jail" prescribed in Ala.Code § 11–14–10 (1975) because it failed to provide audio-visual equipment to monitor inmates and

because it failed to provide adequate medical care to its inmates. Second, plaintiffs argue that the County breached its duty to fund medical care for inmates imposed by Ala Code § 14–6–19 (1975) because it failed to provide adequate funding for the medical care of inmates or for staff who could attend to the medical needs of inmates. Finally, plaintiffs assert liability based on the County's failure to appoint a physician, which it has authority to do pursuant to Ala.Code § 14–6–20 (1975). Under Alabama law, violation of a statutory duty may give rise to a cause of action for negligence. *Ala. Power Co. v. Dunaway,* 502 So.2d 726, 730 (Ala.1987).

To analyze plaintiffs' claims, it is important to understand the relationship between Alabama counties and their sheriffs and the delineation of duties between the two. Under Alabama law, counties have only the powers delegated to them by the legislature. *Turquitt v. Jefferson County,* 137 F.3d 1285, 1289 (11th Cir.1998). It is the sheriff, not the county, who "has legal custody and charge of the jail … and all prisoners committed thereto." Ala.Code § 14–6–1 (1975). In matters related to the "supervis[ion][of] inmates and otherwise operating the county jails," Alabama sheriffs are state, not county, officers, and a sheriff's authority is totally independent of the county commission. *Id.* To summarize the duties of counties versus those of sher-

---

**3.** Both parties refer to the County Commission as "the County" even though under Alabama law "there is … a legal distinction between a county and its commission." *Smitherman v. Marshall County Commission,* 746 So.2d 1001, 1005 (Ala.1999). No judgment can be rendered against the Commission for the County's negligence. *See id.* (dicta). Nevertheless, since both plaintiffs and defendants have treated this as an action against the County itself, the Court will address the claims against this defendant using law applicable to counties.

**4.** The complaint's state law claims are somewhat confusing. Count One asserts a wrongful death claim, in general, but Counts Two and Four set forth the specific theories of negligence upon which the County's liability is premised. Count Two appears to be a claim for pain and suffering inflicted upon the decedent prior to his death as a result of the County's negligent acts, which are set forth in Counts Three and Four.

iffs, "[counties'] responsibilities [with respect to the jail] are clearly enumerated in the statute and relate only to maintaining the jail's physical plant *and providing operational funding*. The sheriffs, on the other hand, have full responsibility for daily management of the jails, including inmate supervision, and they are not subject to county oversight in their performance of this responsibility." *Turquitt*, 137 F.3d at 1291 (emphasis added).

### a. Duty to Maintain Jail— § 11–14–10

Plaintiffs rely on *Keeton v. Fayette County*, 558 So.2d 884 (Ala.1989), as support for their expansive interpretation of the County's duty to maintain the jail under § 11–14–10, which they contend includes the duty to provide adequate medical care and the duty to install audio-visual equipment in the jail. In that case, however, the Alabama Supreme Court held that "by using the phrase 'maintain a jail' in § 11–15–10, the [Alabama] Legislature intended to require the county commission to keep a jail and all equipment therein in a state of repair and to preserve it from failure or decline." *Id.* at 886. While the *Keeton* court found that Fayette County could be held liable under state law for negligence arising from a jail suicide, the duty arose from the county's voluntary assumption of duties related to the care of juvenile inmates, not from the statutory requirement that the County maintain its jail.

Perhaps Fayette County had no duty initially to provide cells for the detention of juvenile offenders in the jail used for the confinement of adults; however, that question is not before us, for once Fayette County voluntarily undertook a duty beyond that which the law imposed,

it thereafter was charged with the duty of acting with due care.

*Id.* at 887.

■ Thus, the *Keeton* court was not interpreting the extent of a county's duty to maintain its jail. Rather, Alabama law provided for the detention or juveniles only in facilities that were licensed or approved by the Department of Youth Services of the Department of Human Resources. Fayette County applied, and was approved, for licensing to house juveniles in its county jail. In so doing, Fayette County certified that it would provide, *inter alia,* 24 hour a day monitoring of juvenile inmates by intercom and visual checks every thirty minutes. Because *Keeton* presented evidence that the county had breached the duties it assumed when it was licensed to house juvenile inmates (*e.g.,* no one was available to monitor the decedent, the intercom system did not work, visual checks were not performed), summary judgment in defendant's favor was reversed on appeal. "[T]he Alabama courts have made it clear that the duty of the county to erect and maintain a county jail pertains exclusively to the physical plant of the jail[,]" *Turquitt v. Jefferson County,* 137 F.3d 1285, 1290 (11th Cir. 1998) (en banc); therefore, neither *Keeton* nor § 11–14–10 cannot support plaintiffs' claim against the County for failure to provide adequate medical care.

■ Plaintiffs have asserted an additional claim arising from the duty maintain the jail—that the County breached its duty by failing to equip the jail with audio visual equipment to monitor inmates. While equipping the jail with audio-visual equipment may fall within the County's duty under § 11–14–10, *see Marsh v. Butler County,* 268 F.3d 1014, 1027 (11th Cir.

2001) (en banc), the facts alleged in the complaint, as amended, do not support such a claim. Plaintiffs must allege and prove not only that a duty existed but also that the County breached that duty and that the breach was the proximate cause of the injury. *See Alabama Power Co. v. Dunaway,* 502 So.2d 726, 730 (Ala.1987). The amended complaint lacks any allegation that the failure to provide audio visual equipment *caused,* or in any way contributed to, the decedent's death. Indeed, the complaint alleges that Rowe's medical condition was well-known to the sheriff and the jailers and that his obvious medical needs were neglected for weeks. From plaintiff's allegations, it appears that the jailers' inability to monitor the decedent was irrelevant because they were aware of the decedent's condition.[5]

### b. Duty to Fund Medical Care— § 14-6-19

Plaintiff alternatively argues that the Count breached a duty to provide medical care to prisoners imposed on it by Ala. Code § 14-6-19. The Court's analysis begins with the statute, which states:

> Necessary clothing and bedding must be furnished by the sheriff or jailer, *at the expense of the county,* to those prisoners who are unable to provide them for themselves, *and also necessary medicines and medical attention to those who are sick or injured,* when they are unable to provide them for themselves.

(Emphasis added.) Although the County argues that the foregoing places the duty to provide medical care solely on the sheriff and jailer, it also places a duty on the county to fund that medical care.

■ Plaintiffs' complaint, as amended, asserts two distinct claims based on the County's alleged breach of duty arising under § 14-6-19. First, plaintiffs allege that the County failed to fund adequate medical care for inmates, causing the decedent to be removed from the hospital prematurely against medical advice and, ultimately, resulting in his death. Second, plaintiffs allege that the County's failure to fund adequate staff for the jail resulted in a lack of medical treatment in the jail, which resulted in his death. As to the former claim, the elements of a cause of action—duty (§ 14-6-19), breach of duty (failure to adequately fund medical care for prisoners) and causation (decedent's death)—are all properly asserted. Although the latter claim is not as clearly stated as the former, construing the amended complaint in the light most favorable to the plaintiff, the Court concludes that plaintiffs have asserted facts which, if proved, might support such a claim— duty(§ 14-6-19), breach of duty (failure to adequately fund staff to provide medical care, *e.g.,* to administer necessary medication) and causation (decedent's death).

### c. Duty to Hire Physician— § 14-6-20

■ Plaintiffs assert that the County negligently failed "to appoint a physician for the county jail pursuant to Ala.Code [§ ]14-6-20" and, "instead, left the provision of health care in the hands of inexperienced and untrained jailers..." and "is

---

5. In *Marsh,* the plaintiffs were beaten by other prisoners in a portion of the jail seldom checked by the jailer due to lack of personnel. Hence, the use of audio-visual equipment could have alerted the attending jailer to intervene and prevent the injuries to the plaintiffs in that case. Here, if audio visual equipment had been available, defendants would have seen what plaintiffs assert they already knew—that Rowe was seriously ill.

thereby responsible for inadequate medical treatment which inmates receive at the hands of those who are left to provide such treatment in the absence of the necessary physician." Amended Compl. ¶ 26. This claim presumes, incorrectly, that plaintiff had a duty to appoint a physician in the first place. Section 14–6–20 creates no such duty; rather, it states that "[t]he county commission in each county *may* elect a physician . . . to attend the inmates of the jails of such counties. . ." *Id.* (emphasis added). Because § 14–6–20 is permissive, not mandatory, the County had no duty to hire a physician. Consequently, its failure to do so did not amount to negligence.

### 3. Summary—State Law Claims Against County Commission

Plaintiffs' state law cause of action against the County, which encompasses three separate theories of liability, survives, in part, and is due to be dismissed, in part. First, the failure to appoint a physician does not give rise to a claim because the law imposes no such duty on the County. While the County does have a duty to maintain its jail, that duty does not extend to the medical care of prisoners. Therefore, plaintiffs' state law cause of action is due to be dismissed insofar as it is premised on either of the foregoing duties. However, plaintiffs' state law cause of action arising from the County's alleged breach of duty to fund medical care for its prisoners states a claim upon which relief can be granted.

### B. Section 1983 Claims

The County seeks to dismiss plaintiff's § 1983 cause of action against it on two grounds. First, it argues that it cannot be held responsible for the acts of the Sheriff under a respondeat superior theory of liability because the Sheriff is a state actor. While plaintiffs do not dispute this proposition, they point out that the amended complaint asserts claims against the County for deliberate indifference to the serious medical needs of plaintiff's decedent that are separate and independent from their claims against the Sheriff. The County's second argument in support of dismissal addresses plaintiffs' assertion that the County itself directly violated the decedent's constitutional rights. The County contends that the direct violation claims fail as a matter of law because the County had no duty or authority to provide medical care to inmates.

"A local government may be held liable under § 1983 only for acts for which it is actually responsible, 'acts which the [local government] has officially sanctioned or ordered.'" *Turquitt,* 137 F.3d at 1287 (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). It is true that a sheriff, acting as a *state* official, is the final policymaking authority in matters regarding the operation of the jail. *Id.* at 1289. Hence, a county is not liable for the actions of the sheriff in matters of jail operation because it has no authority over his actions as a state official. *Id.* at 1289–90. However, as pointed out above, a county does have certain obligations with respect to the jail. *See id.* (recognizing that "Alabama counties possess some duties with respect to county jails" such as erecting and maintaining jails and appropriating funds). Thus, the Court must determine whether any of plaintiffs' deliberate indifference claims relate to duties or responsibilities that have been delegated to the County under Alabama law.

Plaintiffs allege the following conduct on the part of the County amounts

to deliberate indifference to the decedent's serious medical needs: (1) the County's failure to provide adequate funding to meet the medical needs of inmates; (2) the County's failure to provide funding to staff the jail adequately to attend to the medical needs of inmates; (3) the County's failure to appoint a jail physician; and (4) the County's actions "encouraging, pressuring, or enacting formal or informal policies that require personnel at the jail to neglect or cut short necessary medical treatment to inmates in order to cut costs." Amended Complaint ¶ 43. As discussed with regard to the state law claims, *supra* p. 1161, the County does have a duty to fund the medical care of inmates, which could conceivably encompass plaintiff's first two deliberate indifference claims. As also discussed above, *supra* p. 1161–1162, the County does not have a duty to appoint a physician, merely the authority to do so. Even so, since the County has authority to act, its failure to do so could be construed as a County policy. *Cf. Turquitt,* at 1287 (local government may be held liable only for actions officially sanctioned or ordered). Plaintiffs' final claim, based on County policies allegedly requiring jail personnel to neglect certain duties in order to cut costs, does not state a claim under § 1983 because the County has no authority over the Sheriff or his personnel in matters related to the operation of the jail. *See id.* at 1289.

In sum, plaintiff's § 1983 claim against the County actually contains four separate theories of liability. Only one of those theories—based on the County's alleged policies directed at jail personnel—fails, as a matter of law, to state a claim upon which relief can be granted. The remainder of plaintiffs' theories—deliberate indifference to serious medical needs arising from failure to fund medical care, failure to hire a jail physician and failure to provide adequate funding for jail staff to meet the medical needs of inmates—state a claim, in theory, under § 1983.

## VI. Sheriff Lolley

### A. State Law Claims

■ Under Alabama law, as interpreted by the Eleventh Circuit, plaintiffs' state law claims against the Sheriff in both his official and individual capacities are due to be dismissed. First, because the Sheriff is a state official, an official capacity claim is considered to be a suit against the state and, as such, is precluded by the Eleventh Amendment. *See Lancaster v. Monroe County,* 116 F.3d 1419, 1429–30 (11th Cir. 1997). Likewise, the Eleventh Circuit has held that individual capacity claims against an Alabama sheriff for money damages are barred by the doctrine of sovereign immunity, even when the claims involve malicious or intentional wrongdoing. *McMillian v. Johnson,* 101 F.3d 1363, 1364–65 (11th Cir.1996).[6]

### B. Section 1983 Claims

#### 1. Official Capacity Claims/Sovereign Immunity

■ "Alabama state officials are immune from claims brought against them in

6. It should be noted that the panel in *McMillian* found "no clear answer" in Alabama law as to the immunity afforded sheriffs "sued in their individual capacities for malicious or intentional wrongdoing." *Id.* at 1365. However, the *McMillian* panel concluded that it was "bound to follow"a prior Eleventh Cir-

cuit panel's decision, *Tinney v. Shores,* 77 F.3d 378 (11th Cir.1996), "the holding [of which] is clear: under Alabama law, a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity." *Id.*

their official capacities." *Lancaster,* 116 F.3d at 1429. Because Sheriff Lolley is a state official, plaintiffs' § 1983 claims asserted against him in his official capacity are due to be dismissed. *Id.*

### 2. *Individual Capacity Claims/Qualified Immunity*

▉▉▉ Sheriff Lolley contends that he is entitled to qualified immunity from plaintiffs' claims against him in his individual capacity. "Qualified immunity protects government officials performing discretionary functions from civil trial (and other burdens of litigation, including discovery) and from liability if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Lassiter v. Alabama A & M University,* 28 F.3d 1146 (11th Cir.1994) (en banc) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1991)). The qualified immunity inquiry involves a three-step process. *Vinyard v. Wilson,* 311 F.3d 1340 (11th Cir.2002). First, the burden is on the defendant to prove that he was acting within the scope of his discretionary authority. *Id.* If the defendant meets this burden, then the Court must determine whether plaintiff's allegations, if true, establish a constitutional violation. *Id.* Finally, if the facts alleged would prove the violation of a constitutional right, the inquiry is whether the law with respect to that right was clearly established. *Id.*

In this case, the first inquiry can be answered without difficulty. There is no question that Lolley was acting within scope of his discretionary function as sheriff with respect to the actions at issue in this case.

▉▉▉ Because plaintiffs have alleged three distinct Fourteenth Amendment vio-

lations committed by Lolley, each must be examined separately to determine whether, in light of the facts, a constitutional violation even exists. Plaintiffs allege that Lolley personally participated in conduct that deprived the decedent of his Fourteenth Amendment rights and that, as the supervisor and final policymaker for the jail, Lolley adopted policies that resulted in the deprivation of such rights, even in the absence of his personal participation. *See Adams v. Poag,* 61 F.3d 1537, 1544 (11th cir.1995) (discussing supervisory liability with regard to medical treatment of inmate). A jail official violates the Fourteenth Amendment when he acts with deliberate indifference to the serious medical needs of a prisoner. *See Estelle v. Gamble,* 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (Eighth Amendment prohibition on cruel and unusual punishment violated when prison official acts with deliberate indifference to a prisoner's serious medical need); *see also Lancaster,* at 1425 n. 6 (applying deliberate indifference standard to claim by pretrial detainee). Deliberate indifference includes both an objective and a subjective component. *Hill v. Dekalb County,* 40 F.3d 1176, 1186 (11th Cir.1994). The objective component is judged by contemporary standards of decency, while the subjective component requires proof of actual knowledge of the need for medical treatment and intentional refusal to provide it. *Id.*

▉▉▉ Applying the foregoing principles to the facts asserted in the amended complaint, the Court finds that plaintiffs have stated a constitutional violation with regard to the Sheriff's alleged personal participation but have failed to do so with regard to his supervisory liability. When an official "knows that an inmate is in serious need of medical care, but he fails

or refuses to obtain medical treatment for the inmate[,]" his actions amount to deliberate indifference. *Id.* Thus, plaintiffs' allegations that the Sheriff removed the decedent from the hospital against medical advice and failed to provide adequate treatment during his incarceration despite the family's repeated requests to the Sheriff's state a Fourteenth Amendment claim based on the Sheriff's direct participation.

■ Plaintiffs' claims against the Sheriff based on his supervisory liability, however, lack any allegation to support the subjective component necessary to a deliberate indifference claim. Put simply, there is no assertion that the Sheriff was on notice that the policies—(1) failure to train jail personnel regarding medical care of prisoners and (2) giving jail personnel discretion whether to dispense prescription medication—were deficient. Therefore, plaintiffs have failed to state a claim for supervisory liability. *See Adams*, 61 F.3d at 1545 (no liability where supervisor had no notice that procedures amounted to deliberate indifference).

Having determined that one of plaintiff's three claims actually asserts a constitutional violation, the Court must finally consider whether the law with regard to that claim was clearly established. In *Vinyard*, the Eleventh Circuit identified three methods by which the law may be clearly established. "First, the words of the pertinent federal statute or federal constitutional provision in some cases will be specific enough to establish clearly the law applicable to particular conduct and circumstances even in the *total absence of case law.*" *Id.* at p. 1160. Second, in some instances, judicial decisions may set forth a statement of principal not tied to particular facts with such " 'obvious clarity' to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Id.* at p. 1160. Third, if there is no obvious clarity from either constitutional, statutory or judicial authority, then cases involving *materially similar* facts may establish a bright line of appropriate conduct. *Id.* The case at hand falls into the middle category. There need not be materially similar cases on point because the specific legal principles are clear.

■ The Eleventh Circuit set forth the applicable general principle in *Adams v. Poag:* "Our cases have consistently held that knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference." *Id.* at 1543. Even viewed in the abstract, without benefit of prior application to similar facts, the principle applies with obvious clarity here because the Sheriff's alleged conduct is so egregious. The Sheriff knew that Rowe, whom the Sheriff arrested in the hospital while he was being treated for renal failure and pneumonia, had a serious medical condition. Indeed, the Sheriff removed Rowe from the hospital against the advice of his physician. To make matters worse, the Sheriff provided no medical care to the decedent for days, if not weeks, despite the family's appeals. When treatment was provided at a local clinic, the Sheriff again ignored medical advice to hospitalize Rowe. No reasonable person in the Sheriff's position could have believed taking a seriously ill person out of the hospital, placing him in jail without medical care and refusing to readmit him to the hospital was appropriate conduct.

Even if the general principle were not sufficiently clear, the Eleventh Circuit has stated the principle even more narrowly, making it unmistakably obvious that the

Sheriff's alleged conduct was unlawful. In *Lancaster* the court cited an earlier decision, *Morrison v. Washington County*, 700 F.2d 678 (11th Cir.1983), for the proposition that " 'the removal of [the] seriously ill patient from a hospital and his confinement in a jail with no medical facilities under the observations of untrained personnel' amounted to deliberate indifference." *Lancaster,* 116 F.3d at 1426.

### VII. Punitive Damages

Both the Sheriff and the County contend that punitive damages may not be assessed against them. Making no distinction between claims against him in his official capacity versus claims against him in his individual capacity, the Sheriff contends that a suit against him is a suit against the state and, therefore, no punitive damages can be awarded. If this were true, no damages could be awarded at all. There is, however, a distinction between official capacity claims, which the Court has ruled are due to be dismissed on Eleventh Amendment immunity grounds, *supra* p. 1163, and individual capacity claims, as to which punitive damages are permissible. *See Colvin v. McDougall,* 62 F.3d 1316, 1319 (11th Cir.1995).

The County argues, correctly, that punitive damages may not be awarded against it. *See* 42 U.S.C. § 1981a(b)(1) (award of punitive damages not permitted against a government, government agency or political subdivision). Similarly, Alabama law does not permit the award of punitive damages against a county. Ala.Code § 6–11–26 (1975). Therefore, plaintiffs' claims for punitive damages against Choctaw County are due to be stricken.

### VIII. Fictitious Parties

In the original complaint, plaintiffs named as defendants "XYZ, the names and identity of which is not [sic] presently known to the Plaintiffs" whom plaintiffs describe as "the persons entity, employee, or individual who had the responsibility of making sure that the inmates received adequate medical care ..." Compl. ¶ 6. Plaintiffs have moved to strike the fictitious parties and, in support, cite *New v. Sports & Recreation, Inc.,* 114 F.3d 1092, 1094 n. 1 (11th Cir.1997) as *holding* that fictitious party practice is not permitted in federal court. In fact, the footnote cited merely points out, as part of the procedural background, that plaintiff had conceded that fictitious party practice was not permissible. The Eleventh Circuit *held* only that § 1447(d) precluded appellate review of the lower's court's remand order. *Id.* at 1095–97.

According to Professors Wright, Miller, and Cooper, "there is no express statutory or rule prohibition against [the use of fictitious parties]." Charles A. Wright, Arthur R. Miller and Edward H. Cooper, Federal Practice and Procedure § 3642 (3d ed.1998). Moreover, "[s]ince the practice plays an important part in some states in the tolling of the statute or limitations and in the procedure for acquiring personal jurisdiction, an absolute rule against its use in federal court actions seems unwise and might violate the federal court's obligation to apply the rules of decision of the forum state." *Id.* This is especially true in cases removed from Alabama state courts based on diversity where the inclusion of fictitious parties may have a bearing principles of relation back. *See Saxton v. ACF Industries, Inc.,* 254 F.3d 959 (11th Cir. 2001) (en banc) (holding that under Fed. R.Civ.P. 15(c)(1) Alabama relation back principles, including substitution of named defendant for fictitious party, apply after removal where state law provides limitations period). Therefore, the Court declines to strike the fictitious defendants.

## IX. Conclusion

For the foregoing reasons, it is **ORDERED** that the defendants' motions to dismiss are due to be **GRANTED**, in part, and **DENIED**, in part, as summarized below:

(1) Plaintiffs' state law claims against the County arising from the failure to appoint a physician and the failure to maintain the jail are **dismissed**. Plaintiff's state law claim against the County based on the failure to provide adequate funding for medical care for inmates is **not dismissed**.

(2) Plaintiffs' § 1983 claim against the County based on the County's alleged policies directed at jail personnel is **dismissed**. Plaintiffs' § 1983 claims against the County for Fourteenth Amendment violations resulting from the failure to fund medical care, failure to hire a jail physician and failure to provide adequate funding for jail staff to meet the medical needs of inmates are **not dismissed**.

(3) Plaintiffs' state law claims against the Sheriff in both his individual and official capacities are be **dismissed**.

(4) Plaintiffs' § 1983 claims against the Sheriff in his official capacity are **dismissed**. Plaintiffs' § 1983 claims against the Sheriff in his individual capacity are **not dismissed**.

(5) Plaintiffs' claims for punitive damages against the County are **dismissed**. Plaintiffs' claim for punitive damages against the Sheriff, in his individual capacity, under § 1983 are **not dismissed**.

(6) The fictitious parties are **not stricken** from the complaint.